# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE W. CAUBLE,<br><br>                            Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO DEPT.<br>OF ANIMAL SERVICES, et al.,<br><br>                          Defendants. | CASE NO. 16cv777-LAB (BLM)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Six months after veterinarian Bruce Cauble complained about unlicensed x-ray machines at San Diego's three animal shelters, the Department of Animal Services assigned him to the busiest shelter farthest from his home. Animal Services says they needed Cauble, the only full-time veterinarian working at the shelter, where his surgical skills were needed most. Cauble says it was retaliation in violation of his First Amendment rights. But allegations aren't enough at the summary judgment stage. Cauble had to "present affirmative evidence" "from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). He didn't.

The Court grants Animal Services' motion for summary judgment for three reasons: (i) Cauble's assignment to the busiest shelter wasn't an adverse action; (ii) Cauble voiced his complaints pursuant to his job duties; and (iii) Animal Services would have assigned Cauble to the same shelter despite his complaints.

**Background**

After 30 years of private veterinary practice, Bruce Cauble accepted a position with San Diego County's Department of Animal Services. For the next 10 years, Cauble rotated between San Diego's three animal shelters: North Shelter in Carlsbad, Central Shelter in Mission Valley, and South Shelter in Bonita. During the first half of 2013, Cauble was the only full-time veterinarian and one of the few on staff who could perform surgeries.[1]

Until May 2013, Cauble also served as the Licensee Manager—the person responsible for signing premise permits that certify the shelters comply with state regulations. Cal. Code Regs. § 2030.05. As Licensee Manager, Cauble voiced concerns about uninspected x-ray machines at the shelters. Specifically, he provided evidence of three key complaints: In April, Cauble emailed Deputy Director David Johnson; in May, he emailed Director Dawn Danielson; and in June, he emailed the California Veterinary Medical Board ("Board").[2]

In the April email, Cauble wrote that the x-ray machines needed inspection and the staff needed badges to monitor radiation levels. Johnson thanked Cauble for raising the concerns and promised to address the issues. A few weeks later, Cauble sent the May email to Danielson voicing similar concerns and alerting her that he had notified the Board that his "license [was] no longer to be used" for the premise permits at the shelters. Around this time, Cauble told Johnson he didn't want to be the Licensee Manager responsible for signing the premise permits. A month later, Cauble sent the June email to the Board complaining about Johnson and Danielson's handling of the x-ray compliance issues.[3]

In September, after consulting with other managers, Johnson took Cauble off his rotational duties between the three shelters and assigned him exclusively to South Shelter.

---

[1] *See* Dkt. 1 and Dkt. 11-2. All pincites use the ECF page number.

[2] Dkt. 1 at 14, 27, and 30–34 (Cauble says he emailed the Board in July, but the email is dated June 18, 2013. Dkt. 1 at 30.) The Court focuses on these three complaints because Cauble doesn't provide any documents or details about other complaints he alludes to. For example, Cauble mentions complaining about floor heating when he started work, and complaining to the Department of Labor, but only points to vague testimony on these issues.

[3] *See* Dkt. 1; Dkt. 11-2; and Dkt. 11-3 at 3.

Cauble says his commute increased and his "workload dramatically increased due to the large volume of surgery and medical care needed there." About six months later, Cauble took disability leave. He remained on leave for the next two years before going on disability retirement. Cauble sued Animal Services in California state court for retaliating against him in violation of his First Amendment rights and for state law discrimination claims. Animal Services removed the case and now moves for summary judgment.[4]

**Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Although the Court views the evidence in the light most favorable to Cauble, "bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

**Analysis**

To establish First Amendment retaliation, Cauble must show that Animal Services took an adverse employment action against him because he spoke about a matter of public concern as a private citizen. If Cauble provides evidence supporting those elements, then the burden shifts to Animal Services to show either that it had an adequate justification for treating Cauble differently, or that it would have taken the same action despite his complaints. *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013).[5]

The Court grants Animal Services' motion for summary judgment on three independent bases: (1) Cauble's assignment to South Shelter wasn't an adverse action motivated by his complaints; (2) Cauble's speech wasn't protected because he spoke as a public employee pursuant to his job duties; and (3) Animal Services would have assigned Cauble to South Shelter despite Cauble's complaints.

---

[4] Dkt. 1 at 9–11. Cauble offers no evidence for his commute time increasing. Instead, his complaint suggests his commute to North was 10 minutes, but his commute to South was 90 minutes. Inexplicably, Cauble calculated the trip to South Shelter using public transportation, but not for his trip to North Shelter.

[5] Cauble's "failure to meet any one" of the elements above is "fatal" to his case, but the Court need not analyze the elements in any particular order. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 1998).

### 1. Adverse Action

"To succeed on a wrongful-retaliation claim, a plaintiff must show, in the first instance, that he has suffered an adverse employment action. Only then do we address whether the statement which motivated the retaliation is one of public concern." *Nunez v. City of Los Angeles*, 147 F.3d 867, 874–75 (9th Cir. 1998) (citations omitted) (affirming summary judgment because plaintiff failed to show adverse action as threshold issue).

To decide if an employer took an adverse action, "the proper inquiry is whether the action is reasonably likely to deter employees from engaging in protected activity." *Dahlia*, 735 F.3d at 1078 (9th Cir. 2013). Cauble argues that his assignment to South Shelter constitutes an adverse action because Animal Services knew that assignment would create extra work that "aggravated his wrist problems," along with a longer commute that "greatly aggravated Dr. Cauble's back condition." [6] The Court disagrees.

Animal Services offered unrebutted evidence that Cauble's assignment to South Shelter wasn't an adverse action at all, let alone an action motivated by Cauble's complaints. Animal Services assigned Cauble to South Shelter because he asked to step-down from the Managing Licensee position. Since Cauble was no longer responsible for certifying the permits at all three shelters, there was no need for him to rotate to all three. Animal Services then assigned Cauble to South Shelter because "his surgical skills were in the greatest demand" at this location.[7]

Cauble's own testimony supports this claim: he says that there were many more surgeries happening in South Shelter because it "has a lot more medical cases" than the North Shelter. His complaint echoes this fact: "Dr. Cauble's workload dramatically increased due to the large volume of surgery and medical care needed" in South Shelter. And his June email to the Board confirms that South Shelter needed him because Cauble was the only full-time veterinarian on staff at that point.[8]

/ / /

---

[6] Dkt. 1 at 9.

[7] Dkt. 11-3 at 3.

[8] Dkt. 11-2 at 27; and Dkt. 1 at 9, 34.

The Court recognizes that transfers can constitute an adverse action. *See, e.g.*, *Allen v. Scribner*, 812 F.2d 426 (9th Cir. 1987). In *Allen*, an employee was transferred from an important project to do "trivial clerical tasks," faced threats and harassment, and offered evidence from colleagues that the transfer was retaliatory. Cauble's case is different. For starters, he wasn't transferred—Animal Services assigned him to a busy shelter when he resigned from his rotational role. And unlike *Allen*, Cauble hasn't offered any evidence of threats, harassment, or even basic declarations from coworkers to suggest his assignment was adverse. In fact, Cauble didn't even offer his own declaration in opposition to the motion for summary judgment. Cauble was the only full-time veterinarian on staff; assigning him to the busiest shelter was an efficient employment action, not an adverse one. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (affirming summary judgment and noting employee's transfer to different department wasn't adverse action).

Cauble's best potential argument was based on allegations in his complaint that Animal Services transferred two other veterinarians after they voiced concerns. But Cauble never stated when or why Animal Services transferred those vets. Nor did he offer any evidence, like declarations or depositions, to support the claim that the other transfers were adverse actions. And he didn't even mention these transfers in his opposition.

Even if Cauble produced evidence that suggested his assignment to South Shelter was adverse, he still hasn't offered any evidence linking that assignment to his complaints. Cauble submitted an assortment of emails, agency documents, and five pages of Johnson's deposition testimony. None of it bridges the gap between Cauble's complaints about the x-ray machines and his assignment to South Shelter.

Although the Ninth Circuit sets a low bar for an adverse action, this is one of the "cases [where] the would-be retaliatory action is so insignificant that it does not deter the exercise of First Amendment rights, and thus does not constitute an adverse employment action within the meaning of the First Amendment retaliation cases." *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (adverse action where employees were transferred, reprimanded, harassed, threatened, investigated, and fired).

## 2. Public Employee

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). To determine if an employee is speaking pursuant to official duties, the Ninth Circuit advises courts to consider if the employee "speaks in direct contravention to his supervisor's orders"; if he raises "broad concerns about corruption or systemic abuse"; and if he raises concerns outside "his chain of command." *Dahlia*, 735 F.3d at 1074–76 (9th Cir. 2013). The Court finds that Cauble voiced complaints pursuant to his job duties as both the Licensee Manger and, more generally, as a county veterinarian.

Cauble didn't speak in contravention of his supervisor's orders. Far from it: Johnson actually thanked Cauble "for bring[ing] this important issue forward" and ticked-off responses to Cauble's complaints.[9] Nor did Cauble raise broad concerns about corruption—he raised specific concerns that turned on the radiation compliance issues.[10] And two of the three "complaints" Cauble lodged were sent up the chain of command to the Director and Deputy Director of Animal Services. All of this speech originated from Cauble's job duties as Licensee Manager responsible for ensuring the shelters complied with state regulations.

Cauble's June email to the Board is different, but not dispositive. On the one hand, the email seems outside the chain of command because Cauble complained to the Board rather than his supervisors. But Cauble's situation isn't like *Dahlia* where this element was particularly important "in a highly hierarchical employment setting such as law enforcement." *Dahlia*, 735 F.3d at 1074–75. This case is the opposite. As Licensee Manger, Cauble bore special responsibility to "ensure that the premises" he managed complied with state

---

[9] Cauble suggests he told staff not to use the x-ray machines despite Johnson's orders. That's a mischaracterization of the testimony. *See* Dkt. 11-2 at 53–54. But more important, Cauble's confusing the protected speech at issue because he's not claiming retaliation for telling staff not to use the x-ray machines.

[10] Cauble suggests broader concerns like floor heating and medication issues. The Court's addressed the floor heating at n.2, and his three complaints don't discuss floor heating. The medication issues were "due to the premise permit situation," and he testified that complaint came from another veterinarian. Dkt. 1 at 33 and Dkt. 11-2 at 48.

regulations by coordinating with state agencies. Cal. Code Regs. § 2030.05. That responsibility included contacting the Board. For example, in his May email to Danielson a few weeks earlier, he explicitly told her that he was already "in frequent contact with several agencies, including the Ca VMA board."[11]

Even though Cauble stepped down from this position in May, his email a few weeks later voicing the same concerns doesn't suddenly become protected speech just because he shed his former job title. *C.f., Hagen*, 736 F.3d at 1259 (9th Cir. 2013) ("the repetitive nature of Hagen's complaints did not convert them into private speech"). That's especially true because Cauble's concern in contacting the Board was that the compliance issues would eventually "fall back" on him as the "signer of the premise permit"—his email to the Board similarly sought to protect himself from previous actions he took as the Licensee Manager.[12]

Regardless of Cauble's role as Licensee Manager, his speech still wasn't protected because all of Cauble's complaints stem from his "professional responsibilities" as a veterinarian—not from his desire to participate "in public debate" or make "contributions to the civic discourse." *Garcetti*, 547 U.S. at 421–22. For example, Cauble testified that he reported compliance issues as a concerned veterinarian speaking out pursuant to the "standard of practice" and worried about consequences to his license. He contacted the Veterinary Medical Association to obtain advice on how, as a veterinarian, he should handle the radiation compliance issues. And Cauble alleges that as a veterinarian, he "had the authority to investigate, discover, or correct reported violations" or noncompliance with state regulations.[13]

The job description for a county-employed veterinarian corroborates that understanding: Veterinarians must provide advice "to maintain compliance with [the] established standard of care." A veterinarian's duties also call for "maintaining appropriate medical and surgical supplies" and communicating with "representatives of outside

---
[11] Dkt. 1 at 27.

[12] Dkt. 11-2 at 58, 62.

[13] Dkt. 11-2 at 53, 57, 58–59 and Dkt. 1 at 8.

agencies." While job descriptions aren't dispositive, collectively, Animal Services has offered unrebutted evidence that Cauble's speech "owes its existence to [his] professional responsibilities" as a public employee. *Garcetti,* 547 U.S. at 421; *see Hagen*, 736 F.3d at 1257–58 (reversing jury verdict because insufficient evidence police officer spoke as private citizen when reporting safety issues).[14]

Perhaps the biggest problem here is that Cauble's hasn't offered *any* evidence or argument about his job duties. The closest he gets is citing deposition testimony that after "rereading [Johnson's] job description" he realized Johnson was ultimately responsible for compliance. But Johnson's job description isn't germane to the crucial issue at stake: Cauble's job duties. And Cauble's conspicuously silent about what he thinks those job duties entail. "The proper inquiry" for determining if an employee was acting according to employment duties "is a practical one." *Garcetti*, 547 U.S. at 424. The evidence in the record is undisputed that, practically, Cauble's job entailed reporting compliance issues that affected his practice of veterinary medicine at the shelters.[15]

### 3. Same Action Anyway

Even if Cauble could make out the elements above, he hasn't raised a material dispute that Animal Services wouldn't have assigned him to South Shelter anyway. California law requires the Managing Licensee to maintain a "physical presence" in all facilities to ensure compliance with state regulations. Cal. Code Regs. § 2030.05(d). As already discussed, Animal Services offered evidence that since Cauble was no longer the Licensee Manger, they didn't need him maintaining a presence at all three shelters. Instead, they needed his surgical skills—as the only full-time vet—at the busiest shelter.

Cauble only offered one counterargument on this score. He argues that when he started working for Animal Services full-time in 2001, he spent 90% of his time at North Shelter. Where Cauble worked in 2001, however, isn't probative of where he was needed a decade later. And Johnson offered testimony that Animal Services needed Cauble in South

---

[14] Dkt. 11-3 at 7; Dkt. 12-1 at 5; and Dkt. 1 at 30.

[15] Dkt. 12 at 11 and Dkt. 11-2 at 17–23.

1  Shelter in the fall of 2013. What's more, Johnson testified that Cauble was already spending
2  the majority of his time there.[16]

3  Cauble calls Johnson's claim "self-serving" and "unsupported." Not so. Cauble's own
4  words support Animal Services position: In his June email to the Board, Cauble says that in
5  recent years, he spent as much as "80+ percent" of his time at the South Shelter. While the
6  Court must look at the evidence in the light most favorable to Cauble, it need not accept a
7  fact as "disputed" when countered with evidence that's not probative, and, contradicted by
8  the plaintiff's own words. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th
9  Cir. 1994) (affirming summary judgment because employee "presented no evidence to rebut
10 [defendant's] evidence that the transfer was not retaliatory").[17]

* * *

12 "Where the record taken as a whole could not lead a rational trier of fact to find for
13 the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v.
14 Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That's the case here. Cauble's failed to offer
15 affirmative evidence that his assignment to a busy shelter where his skills were needed was
16 an action "likely to deter" him "from engaging in protected activity." *Dahlia*, 735 F.3d at 1078
17 (9th Cir. 2013). Cauble was free to continue voicing his complaints while working at the
18 South Shelter; no evidence in the record suggests otherwise. And even if the action was
19 adverse, Cauble's failed to offer any material evidence a jury could rely on to find that he
20 was speaking as a private citizen, and that, but for his speech, Animal Services wouldn't
21 have assigned him to the South Shelter.

22 / / /
23 / / /
24 / / /
25 / / /

---

[16] Cauble argues Animal Services didn't provide any evidence. That's incorrect. Johnson provided sworn testimony. *See* Dkt. 11-2 at 3. Cauble, on the other hand, didn't offer his own declaration—or any other depositions, declarations, or documents—countering Johnson's declaration on these points.

[17] Dkt. 12 at 12; Dkt. 1 at 32; *see* Dkt. 11-3.

## Disposition

Animal Services' motion for summary judgment on Cauble's federal claim is granted with prejudice. The Court declines to exercises supplemental jurisdiction over the two remaining state law claims and dismisses them without prejudice. 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").[18] The clerk is directed to close the case.

**IT IS SO ORDERED**.

Dated: July 7, 2017

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[18] The complaint filed at Dkt. 1 is missing page nine. The Court notified the parties and received the full complaint, but orders Animal Services to file the full complaint as a supplemental document to provide a complete record.